**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARON HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21-cv-1174** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **ADDUS HOMECARE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

*Pro se* plaintiff Sharon Harris brings this action against her former employer, defendant

Addus Homecare, d/b/a Addus Healthcare, Inc., alleging that defendant unlawfully terminated

her: (1) because of her race and color, in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. §2000e, *et seq.*, and 42 U.S.C. §1981; and (2) because of her age, in violation of the

Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* (Dckt. #1 ¶9). On March 28,

2024, defendant moved for summary judgment, (Dckt. #68), and filed a Rule 56.1 Statement of

Material Facts, (Dckt. #70 ("DSOF")), supporting Memorandum, (Dckt. #69), and Local Rule

56.2 notice (Dckt. #66). Plaintiff did not respond to defendant's motion by the initial deadline to

do so but, after being granted an extension by the Court, (Dckt. #75), she filed a response on

August 6, 2024, (Dckt. #77 (inadvertently titled as a "Motion for Summary Judgment")).

Defendant filed a reply on August 27, 2024, (Dckt. #82). As such, the motion is ripe for

disposition and the Court grants summary judgment in favor of defendant for the following

reasons.

## I.    LEGAL STANDARD FOR CONSIDERATION OF SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when

the moving party shows that "there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Issues of fact are material if they are outcome determinative. *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Evidence considered on a summary judgment motion "need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016); *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Furthermore, courts do not weigh the evidence or resolve conflicts in the record at summary judgment; instead, they review the evidence presented in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013). Summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II.  FACTUAL RECORD

### A.  Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the

2

time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). In turn, Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the event of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

In this case, defendant filed a Rule 56.1 statement of material facts with its motion for summary judgment, (Dckt. #70), which included a proper citation to the evidentiary material supporting each fact. Because plaintiff is a *pro se* litigant, defendant also served her with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dckt. #66). This notice explains the meaning of a motion for summary judgment, the requirements for responding to both the movant's motion and its Rule 56.1 statement of material facts, and – perhaps most significantly – the consequences of failing to properly respond to a summary judgment motion and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1. It is well-settled that a plaintiff's *pro se* status does not excuse her from

complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules").

Plaintiff, for her part, submitted a response purporting to address defendant's statements of material fact. (Dckt. #77). In it, plaintiff lists 12 exhibits – none of which are named, attached, or were otherwise submitted to the Court – and also includes numbered paragraphs in which she appears to dispute at least *some* of defendant's statement of facts seemingly based solely on her own recollection. Plaintiff did not properly cite any evidentiary material supporting those responses, nor did she respond to *all* of the statements as required by Local Rule 56.1. Plaintiff also failed to provide a substantive response brief to defendant's motion.

In a reply in support of their motion, (Dckt. #82), defendant argues that plaintiff has failed to properly dispute its statement of facts with a specific citation to the evidentiary record. The Court agrees and to the extent the Court deems those facts material, they are admitted. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). The Court does so even in consideration of plaintiff's *pro se* status given that defendant has provided plaintiff with the requisite Local Rule 56.2 notice to unrepresented individuals. *See Coleman v. Goodwill Indus. of Se. Wisconsin, Inc.*, 423 Fed.Appx 642, 643 (7th Cir. 2011). Again, as the Seventh Circuit has made clear, "plaintiffs status as a *pro se* litigant does not excuse [her] from complying with Local Rule 56.1." *Brown v. Erickson*, No. 16 C 50337, 2019 WL 1532887, at *1

4

(N.D.Ill. Apr. 9, 2019); *Coleman*, 423 Fed.Appx. at 643 ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules.").

### B. Plaintiff's Employment With Defendant

#### 1. Plaintiff worked as a home care aide beginning in 1999.

Defendant is a company which provides non-medical in-home supportive services to the elderly and persons living with disabilities. DSOF ¶1. In April of 1999, plaintiff, an African American woman, began working for defendant as a Home Care Aide. *Id*. ¶6. Plaintiff served clients in their homes by cooking, cleaning, and providing personal care and transport to medical appointments as needed. *Id*. ¶¶8–9. Plaintiff worked remotely and began each workday by going directly from her home to the homes of her clients. *Id*. ¶8

Defendant provided a mobile device called Electronic Visit Verification ("EVV") to its aides in order to track their client visits. *Id*. ¶¶8, 10. The EVV device worked as follows. When plaintiff arrived at a client's home, she clocked into her visit using EVV and entering the visit address. *Id*. ¶11, 24–25. When the visit was completed, plaintiff recorded all completed tasks in EVV, confirmed the entry by her signature, and clocked out of the visit on the device. *Id*. Finally, the client confirmed they received the recorded services by providing their signature in EVV at the end of each visit. *Id*. ¶12.

EVV uses a Global Positioning Services ("GPS") technology called Celltrak to monitor the user's location in real-time within approximately five feet. *Id*. ¶13. Celltrak allowed defendant to verify when and where its employees provided their in-home services. *Id*.

As a home-services provider, defendant bills various government and private payors for services rendered to its clients, including Medicare and Medicaid. *Id*. ¶14. As such, defendant enforces various policies – such as use of the EVV and Celltrak software – to remain in compliance with federal and state requirements applicable to recipients of those funds. *Id*. As an

5

additional example, defendant maintains a "False Claims Act Policy," which provides "that employees must refrain from any conduct which could result in the submission of a false claim to any federal, state, governmental, commercial, or private payor." *Id*. ¶16. Defendant conducts internal audits to ensure compliance and shares audit information with outside payors who conduct their own audits for common clients. *Id*. ¶¶15, 29. When defendant identifies non-compliance with its policies or procedures, its protocols call for it to "take[] prompt corrective action." *Id*. ¶15.

### 2. Defendant investigated plaintiff's reported home care visits and terminated her employment after it found discrepancies between her Celltrak location and her EVV reports.

Plaintiff began providing in-home services to one of defendant's clients, LS, around 2014 or 2015. *Id*. ¶22. On March 26, 27, and 28 of 2018, plaintiff used EVV to report that she provided care for LS at her home and EVV records for those dates bear a signature matching LS's first and last name. *Id*. ¶24. During her deposition, plaintiff testified that she provided services to LS on those dates but at a different address: LS's mother's house. *Id*. ¶26.

Based on plaintiff's EVV submission, defendant billed an outside payor based on plaintiff's EVV submission for March 26, 27, and 28, 2018. *Id*. ¶30. In 2019, that payor performed an audit and shared at least part of that audit's results with defendant. *Id*. ¶29. The payor told defendant that it received a bill for payment from a hospital in Chicago for *in-hospital* care it provided to LS on March 26, 27, and 28, 2018 – the same dates plaintiff certified that she had provided *in-home* care to LS. *Id*. ¶31.

In response, defendant initiated an internal investigation into plaintiff's EVV timesheets and Celltrak data for the March 2018 dates. *Id*. ¶32. Defendant contacted LS to inquire whether she received services from plaintiff on March 26, 27, and 28, 2018. *Id*. ¶34. LS told defendant that she was hospitalized on those dates and did not receive services from plaintiff. *Id*.

Defendant also reviewed plaintiff's Celltrak data for those dates, which did not match plaintiff's self-reports for the service she recorded that she provided for LS. *Id*. Instead, Celltrak located plaintiff at two different addresses, each of which are over two miles away from either LS's, or her mother's, homes. *Id*. ¶¶26, 28, 33.

On April 9, 2019, defendant sent plaintiff a letter explaining that it discovered discrepancies between her reported and actual work for the March 2018 dates. *Id*. ¶35. Plaintiff received the letter, which warned her that failure to respond would lead to termination of her employment. *Id*. After receiving the letter, plaintiff met with defendant's Employee and Customer Relations Manager, Sonia Shackleford, a fifty-nine-year-old Black woman and the ultimate decision-maker regarding plaintiff's employment status, who explained why plaintiff would be terminated based on their investigation. *Id*. ¶¶39, 50. After plaintiff did not respond to the letter, defendant kept its word and terminated plaintiff's employment on May 15, 2019. *Id*. ¶¶37-38.

At her deposition in this matter, plaintiff testified that she believes she was terminated because of her race, age, and because she had been with the company for twenty years. *Id*. ¶¶40–42. Plaintiff admittedly, however, did not file a grievance with her union regarding her allegations of discrimination and testified further that she knew of no coworkers – let alone non-Black or younger coworkers – that were investigated for submitting false timesheets or were not terminated for doing so. *Id*. ¶¶44–48. On February 27, 2020, plaintiff initiated a charge of discrimination against defendant with the Illinois Department of Human Rights. (Dckt. #1 at 7). On February 19, 2021, plaintiff brought her *pro se* complaint against defendant. (Dckt. #1).

### III. DISCUSSION

Plaintiff alleges that defendant discriminated against her on the basis of her color and race in violation of Title VII and 42 U.S.C. §1981, as well as on the basis of her age in violation of the ADEA, when they terminated her employment on May 15, 2019. (*Id*. at 3-4). However, as explained below, plaintiff's claims fail because she presents insufficient evidence to allow a reasonable jury to find that she was subjected to discrimination based on her race, color, or age.

### A. Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether defendant discriminated against her on the basis of her race or color.

To prevail on her claims of race and color discrimination, plaintiff may proceed under the direct and indirect methods of proof to establish her race and color discrimination claims. *See, e.g.*, *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). The ultimate question is whether the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018), *quoting Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Under the direct method, the focus is on "whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Atanus*, 520 F.3d at 671. Proof under the direct method "'is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion . . . but also includes circumstantial evidence which suggests discrimination through a longer chain of inferences.'" *Id.* at 671, *quoting Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1053 (7th Cir. 2006). "[C]ircumstantial evidence demonstrating intentional discrimination includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; [and] (2) evidence, whether or not rigorously statistical, that similarly situated employees

outside the protected class received systematically better treatment. . . ." *Id.* at 672 (internal quotation marks omitted).

Through her insufficient response to defendant's motion and statement of facts, plaintiff – who alleges, without elaboration, that she was treated less favorably due to her race, (Dckt. #1 at 5) – presents no direct or circumstantial evidence that links her race or color to her May 2019 discharge, so these claims fail under the direct method of proof. *Atanus*, 520 F.3d at 671.

The Court is therefore left to consider whether the record creates a presumption of discrimination through an indirect method of proof. Typically, a plaintiff may make a prima facie case through this method by showing the following:

> (1) she belongs to a protected class; (2) she performed her job according to [defendant's] legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by [defendant].

*Id*. at 672–73. The burden then shifts to defendant to produce a legitimate, non-discriminatory reason for plaintiff's termination. *Id*. If defendant produces such a rationale to rebut plaintiff's prima facie case, the burden then shifts back to plaintiff to show that defendant's reasons are false and only a pretext for discrimination. *Id*.

Defendant asserts that plaintiff cannot establish a discrimination claim under the indirect method of proof for three reasons: (1) plaintiff failed to show that she met defendant's legitimate expectations of her performance at the time of her termination; (2) plaintiff failed to identify any similarly situated non-African Americans who were treated more favorably than her; and (3) plaintiff failed to present evidence showing that defendant's legitimate, non-discriminatory reasons for her termination were a pretext for discrimination. Plaintiff's failure to produce sufficient evidence to create a disputed issue of material fact as to either one of the above

elements will doom her case.  *See, e.g., Riley v. Elkhart Community Schools*, 829 F.3d 886, 892 (7th Cir. 2016); *Atanus*, 520 F.3d at 672–73.

1. **Plaintiff has failed to offer sufficient evidence that she met defendant's legitimate expectations at the time of her termination.**

Whether plaintiff met defendant's legitimate expectations focuses on whether she met defendant's expectations "*at the time she was fired.*"  *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) (emphasis in original); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007).

Here, defendant asserts that plaintiff failed to meet its legitimate business expectations in that she failed to abide by its time reporting requirements in mid-March 2018.  Plaintiff has offered *no* evidence to allow a reasonable jury to find that she met defendant's reasonable expectations given that she reported providing *in-home* care services to LS on March 26, 27, and 28, 2018, even though the undisputed facts show that LS was receiving *in-hospital* care on these same dates.  (Dckt. #69 at 6).  It is also undisputed that: (1) defendant was required by federal, state, and private payor requirements to accurately its billings for services rendered to patients; and (2) upon her hire, plaintiff signed a confirmation that she understood that misreporting her time – including when a client is hospitalized – constituted fraud and would lead to her termination.  DSOF ¶¶14-20.

Plaintiff's undisputed failure to accurately report her time and defendant's decision to terminate her employment on that basis dooms her discrimination claims.  *See, e.g., Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (plaintiff failed to meet employer's expectations when he falsified records); *Mehrberg v. Ill. Dep't of Com. & Econ. Opportunity*, Case No. 18-cv-02032, 2022 WL 19321, at *6 (N.D.Ill. Jan. 3, 2022) (collecting cases where undisputed facts demonstrate failure to meet employers' legitimate expectations).

Moreover, as discussed above, plaintiff failed to respond to defendant's request for an explanation about the reporting discrepancy while her termination played out and likewise failed to substantively respond to any of defendant's arguments in its motion or cite to *any* evidentiary material to the Court to properly dispute defendant's statement of facts. *See Mehrberg*, 2022 WL 19321, at *6 (plaintiff's failure to respond to argument that she was not meeting work expectations fails to create a genuine issue of fact).

Thus, the undisputed evidence shows that plaintiff was terminated because she failed to meet defendant's legitimate expectations, and no reasonable juror could conclude otherwise. *Ortiz*, 834 F.3d at 765.

### 2. Plaintiff has failed to offer sufficient evidence that a similarly situated non-African American employee was treated more favorably than her.

To establish that other employees were similarly situated to her, plaintiff "must show that members of the comparative group are directly comparable to her in all material respects." *Atanus*, 520 F.3d at 673 (cleaned up); *Abrego*, 907 F.3d at 1013 (to show that a coworker is similarly situated to a plaintiff who has been disciplined, plaintiff must proffer evidence that the other employee had a "comparable set of failings") (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)).

Plaintiff has failed to do so here. Instead, plaintiff testified in her deposition that she is not aware of any other home care aide who defendant believed falsified EVV records, reported they provided care for a client who was actually hospitalized, or was otherwise accused of submitting false timesheets, let alone one who was not terminated. DSOF ¶¶45–49. As such, no reasonable juror could conclude that such comparator exists, which is another fatal blow to plaintiff's claims of race and color discrimination. *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 723–24 (7th Cir. 2018) ("Ultimately, plaintiff bears the burden of showing the individuals [she]

identifies are similarly situated. . . . Because plaintiff fails to do so, [her] comparator argument must fail.").

### 3. Plaintiff has failed to offer evidence showing that defendant's legitimate, non-discriminatory reasons for terminating her employment were pretextual.

Defendant has offered a legitimate, non-discriminatory reason for terminating plaintiff's employment. As a result, it was plaintiff's burden to present sufficient evidence to allow a reasonable jury to find that defendant's stated rationale for her termination was false and that defendant's actions were "based on prohibited discriminatory animus." *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 663 (7th Cir. 2011). Pretext can be shown by evidence showing "that [defendant's] reason had no basis in fact, that the explanation was not the real reason for its action or that the reason stated was insufficient to warrant the adverse job action." *Atanus*, 520 F.3d at 674 (cleaned up). Furthermore, plaintiff "must do more than simply allege that an employer's stated reasons are inaccurate; [she] must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *Benuzzi*, 647 F.3d at 663 (cleaned up).

Here, plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact as to whether defendant's reason for her termination was pretextual. *See, e.g.*, *Atanus*, 520 F.3d at 674; *Benuzzi*, 647 F.3d at 663. Indeed, she effectively conceded this point, among others, by declining to properly and substantively respond to defendant's motion for summary judgment.[1] *See, e.g.*, *Peretz v. Sims*, 662 F.3d 478, 480–81 (7th Cir. 2011) ("By failing to

---

[1] During her deposition, plaintiff testified to her belief that she was terminated because of her race because defendant "had different, other cultures" in its operations and she could not think of any other reason that would have justified her termination. DSOF ¶40. Such an unsupported, conclusory assertion is insufficient to create a disputed issue of material fact. *See, e.g., Balderston*, 328 F.3d at 320 (To avoid summary judgment, "the nonmoving party must set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial").

respond to the motion for summary judgment, Peretz concedes a number of damaging facts that, taken together, demonstrate that none of the named state employees were responsible for his purported constitutional deprivation."); *Barnes v. Nw. Repossession, LLC*, 210 F.Supp.3d 954 (N.D. Ill. 2016) (holding that a plaintiff concedes the defendant's entitlement to summary judgment by failing to respond to arguments on that claim made in the defendant's motion). The Court is therefore left with defendant's uncontroverted, non-discriminatory rationale for plaintiff's termination.

For these reasons, defendant is entitled to summary judgment on plaintiff's claims that defendant discriminated against her on the basis of her race and color.

**B.    Plaintiff has failed to raise a genuine issue of fact as to whether defendant discriminated against her on the basis of age when it terminated her employment.**

Plaintiff asserts – without any supporting evidence – that defendant terminated her because of her age because defendant was "getting rid of people," she had been employed there for twenty years, and that she was "getting up there in age." DSOF ¶¶41–42. Such vague, speculative assertions are insufficient to demonstrate a causal link between plaintiff's age and her termination. *See, e.g., Winsley v. Cook Cnty.*, 563 F.3d 598, 605 (7th Cir. 2009) ("vague assertions" do not suffice to meet plaintiff's burden on summary judgment for their Title VII discrimination claim); *Hoosier v. Greenwood Hospitality Mgmt. LLC*, 32 F.Supp.3d 966, 976 (N.D.Ill. 2014).

Thus, plaintiff's claim that defendant violated the ADEA when it terminated her employment "fails for the same reasons [her] Title VII claims failed: no prima facie case under *McDonnell Douglas* and no holistic evidence under *Ortiz*." *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 960 (7th Cir. 2021) (cleaned up). In particular, as explained above, (1) plaintiff failed to show that she met defendant's legitimate expectations of her performance at the

time of her termination; (2) she has failed to identify any comparators – much less, younger comparators as required for her age discrimination claim – who were treated more favorably than her; and (3) plaintiff put forth no evidence to show that defendant's legitimate, non-discriminatory reasons for her termination are a pretext for discrimination. *Igasaki*, 988 F.3d at 960–61. Accordingly, defendant is entitled to summary judgment on plaintiff's age discrimination claim as well.

## CONCLUSION

For all of the above reasons, defendant's renewed motion for summary judgment, (Dckt. #68), is granted as to each of plaintiff's claims.

**Date: October 15, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**

14